Loan Trust, 21-4049. Counsel for Appellant, if you would make your appearance and proceed. Good morning, Your Honors. My name is Ronald Aidee. Counsel for Alex Taylor, the Plaintiff District Court properly impose sanctions on Mr. Taylor for some improper pleading. And the second is whether the District Court had sufficient evidence before it of NCSLT 2007-1's ownership of the Taylor loan to grant that trust summary judgment against Mr. Taylor. I will address first the issue of sanctions. And I would first point out that the plaintiff's error in pleading an identity theft claim in his proposed First Amendment complaint would have been easily and entirely corrected with a Rule 11 motion. This isn't the case anything like requiring inherent sanctions. In pages 36 through 40 of the Chamber's decision, the Supreme Court went down and talked about all the misconduct at issue. Chambers trying to evade the sale of a television station and the TRO regarding that sale by selling the station a second time to a third party. Chambers intentionally withholding knowledge of the second sale from the court, defying a preliminary injunction found in a series of meritless motions, pleadings, and delaying actions, seeking to render the purchase agreement meaningless by applying for FCC permits to build a new transmission tower and relocate that transmission facilities to a new site. Opposing contrary to the court's injunction, NASSCO's application for transfer of the station's license, refusing to close on the sale as ordered by the station. On those facts, the Supreme Court held that the district court was amply justified in using its inherent authority to impose sanctions. You used the word amply justified and you also said poster child. Well, just because something is a poster child doesn't mean that something less significant would not qualify for inherent sanctions too. I mean, your client, I don't know, the word lie is used a lot lately and probably inappropriately, but I don't know how to call anything else but a lie. I mean, he said point A and in fact he knew point A was not right. I mean, so lying to the court is not a good thing, as you know. But the context I think is very important. I'd like to address that for a moment. Defendants knew early on that the plaintiff was not going to We had a phone conversation early on in this case with Mr. Altman, his partner, Mr. Chardell and myself, in which they urged at length that plaintiff prosecute his identity theft claim. And I, in response, repeatedly reiterated, no, we are not going to prosecute the identity theft claim. We've only got money for one expert. We're going to spend it on the standing issue about whether your client owns this home. We are not going to prosecute the identity theft claim. Well, that response is not responsive. I mean, the point is you're saying, yes, we're not doing it for reasons that have nothing to do with the fact. It's not true. We're not only are we going to not prosecute it, we're going to withdraw it. You don't have to make admissions for your client, but you darn sure can get it out of the case. As I understand it from the briefing, those allegations were in the second amended complaint that you tried to file that ended up not being filed. Is that not right? They were, but once again, that was by mistake. And at that point when we did that, when I did that, the plaintiff had already served requests for admissions on this, asking Mr. Taylor to admit that the student loan was signed by him, that he signed the loan documents. And we never responded, resulting in a deemed admission that he did sign the loan documents prior to us ever filing the motion for the proposed first amended complaint. And then when the court on January 6th put it to me, did your guy sign the loan documents? I said, yes, he's the guy. So in the context of Rule 11, a Rule 11 motion would easily have resolved this because had we been served with a Rule 11 motion, we would have immediately, I would have immediately withdrawn the offending plea. I would have, it would have been gone. Why should that happen? I mean, you have a self-executing duty to not present false information to the court. In the original complaint, it was false. And in the proposed amended complaint, it was false. And that's, I mean, that's not something that somebody has to to lie in the information he gives you for the pleadings. I mean, it seems like relying on the idea that someone had to file a motion to put you on notice that you needed to withdraw the false, and for the knowingly false information from the pleadings, just doesn't go very far. Well, I would suggest that's the very reason for Rule 11, is to get something like that out of the pleadings, and that the drafters of Rule 11 had a problem like that in mind when they drafted it. The question that Chambers v. Nasco raised was, can Rule 11 do the work? Can Rule 11 do the work of resolving the issue? And if it can, then Chambers said, a court should ordinarily use Rule 11. And our point is, in this context, Rule 11 would have done the work. There was no problem. Do the Rule 11 sanctions flow to you or to your client? So if I file a, if I'm your opposing counsel and I file a rule motion for Rule, under Rule 11, I may mean that at you as the attorney, aren't I, for filing that pleading? I think the rule provides that sanctions can be imposed against either, sir. Okay. Are you suggesting that if we remanded and told the district court, you have to apply Rule 11, that you wouldn't oppose that? Right. In the district court, you'd say, yes, you have authority and we're good for it. Please sign the order on the bottom line. Well, if the way Rule 11 operates is, we would be given an opportunity to first, under the safe harbor, to first withdraw the offending pleading. We've already done that. So you say Rule 11, but then you'd fight it to the bitter end if we remanded it back. Well, we, no, we would, we would point out to the court, we've withdrawn the offending claim. Okay. Can I ask you a question on a different subject since you're over halfway through? As far as the merits of this, if we find that, in fact, there is standing, what is your defense to a claim preclusion and the statute of limitations? You had an opportunity in 2014 to make the very claim. Is that correct? I didn't hear part of that, sir. I apologize. All right. Well, you contest standing in this case. Correct. And if we were to rule otherwise and say, indeed, there is standing, then I'm asking you, why would we not, the next step be that your claim is precluded under a claim preclusion, as well as a statute of limitations, and that you had an opportunity way back in 2014 to make these same claims? Under federal law, that may have been the case, but under Utah law, the mere opportunity doesn't foreclose it. The only issue before the state court was the question of identity theft. That was the only thing raised with the state court. The issue of standing was never raised with the state court, and under Utah law, which I would submit is the government law in this case, the standing issue survives. But I'd like to make one final point about the sanctions, and that is defendant filed their motion for sanctions under Utah Code 78B5825. That statute has no application to this case. Yes, but in your response, you contemplated inherent authority by the plain terms of your response. Well, we mentioned that the court should not use its inherent authority. Yes, but that contemplates that you know inherent authority is on the table. I just want to make sure, you said that Rule 11 really contemplates this kind of situation. What I want to do is just know what's your best case for why this is a Rule 11 case, and don't give me Chambers, because Chambers has a parade of horribles. This case doesn't. Do you have a case that has lesser conduct that the court says Rule 11 is this case? I don't off the top of my head, no sir. Okay. All right. Let me ask you one question. You used the word standing. There's been much discussion about whether really what we're talking about is capacity to sue, because we're not talking about standing in an Article 3 standing sense, right? We're talking about standing in the sense that whether or not they own the loan. Whether or not they have the right to go bring the action in state court relative to the loan. Correct. If they don't own the loan, they don't have a right to bring the action. Well, okay, but there was also a question under the Utah Trust Registration Act, right? Is that not what we're talking about? Are we talking about that? Yes, we are. May I make one more point before talking about the Utah Trust Registration Act? Yes, please. And that is the sanctions motion was brought under 78B825, which has no application to this case. In Miwot, the defendant was going to be sanctioned with contempt sanctions and specifically pointed out to the court, I hope if the court is going to use its inherent authority, it gives us notice and an opportunity to be heard. And got an oblique response from the magistrate presiding. And then the court did go ahead and impose inherent sanctions rather than contempt citations. And this court said, you've got to reverse. On pretty egregious conduct. And in this case, it parallels it right down the line with Miwot. We did mention that the court should not use its inherent authority, that there wasn't bad faith. But we were never given notice and an opportunity to be heard. The defendant's sanctions motion never raised... If you'll remind me, in the Milan case, is that the M-E-L-O-T? M-E-L-O-T, 768 Fifth Street, Kennedy Street. I just want to be sure we're talking about the same place. In that case, did this comment that you're alluding to, did this come up in the context of an oral presentation, if you'll remind me, or was it through briefing that that statement was made? The reason I think that may be a distinction with a difference is, it's one thing to say that statement in the context of an oral presentation. It's another, when you're on paper, this is your time to oppose. This is your time to say what you've got to say. And at that point, it would seem to me that if you contemplate that there could be inherent authority imposed on you, that it's your time to comment on it. You had your opportunity to comment, is my point. Well, we didn't. No, we didn't, sir. I would respectfully disagree. We didn't know what conduct the court was going to consider, specifically, on inherent authority. We didn't know the standards by which the court was going to rule, which M-E-L-O-T also addressed. Now, M-E-L-O-T may have been an oral colloquy between the magistrate and counsel. I think that may be correct, sir. But I don't think that's really an important distinction. They knew about it. That's the point. They knew that the court may use its inherent authority. But I don't think you've got to engage in anticipatory briefing. I think that would be unfair. Well, you knew about it. I mean, you said so in your brief. Don't use your inherent authority. Nobody says that unless they think the court's going to use its inherent authority. And you knew that the issue was that your client had lied or told, made a false statement that ended up in the complaint that you signed and submitted to the court. And you knew that was, you knew that what you were defending, the conduct you were defending. Well, we didn't know what the specific citation would be, sir. And I think that's the point of M-E-L-O-T. And we didn't know that the standards by which the court would decide inherent authority. It parallels M-E-L-O-T because they knew that the court may use notice and opportunity. They had knowledge. And once again, I don't think anticipatory briefing would be fair in that context. My time is up. Thank you, counsel. May I remove my mask, your honors? That's fine. Thank you. Good morning, your honors. Michael Altman on behalf of the appellees, National Collegiate, Transworld, and EGS. The opening argument, I think, exemplifies this case. This has been a moving target for the defendants in this case. In simplest form, this is a case about appellant Alex Taylor trying anything and everything to avoid paying a loan that he, by his own admission, incurred and never repaid. It began in 2006 when he incurred the loan, $30,000 with Chase Bank. He's never made a single payment. Rather than paying it, he's been spending the last 16 years asserting every argument under the sun to try to get out from under his obligations. And while admittedly repaying a large $30,000 debt is stressful, he has only exacerbated the problems. I'd like to address quickly some of the points that were raised in Mr. Eaddy's opening argument, particularly on sanctions. I think the Chambers case is clear that there's no Rule 11 obligation. In fact, it found that the court can sanction based upon inherent authority without resorting to Rule 11. And it clarified, too, that one of the reasons a court might do that is when the false statement is not known to be false by the opposing party. And while an appellant attempts to blame my client for not knowing that the false statement was false and that we should have filed a motion at some earlier time, we issued discovery and we litigated that issue. We didn't know it was false. We were defending the case based upon the allegations. I think the court rightfully recognized that the statement was untrue and was repeated multiple times. It was not withdrawn until actually a couple of months after it was admitted to being a false statement. In terms of the objection based upon due process, I'd first like to state that objection was not raised in the lower court. That objection was raised for the first time on this appeal. Therefore, it's our position that it's waived. It's also, as Your Honor has pointed out, disingenuous. The reply brief specifically addressed the court's inherent authority and that was part of the discussion and oral argument. You mean before the district court there was discussion about the court using its inherent authority? Correct, Your Honor. Did your opposing counsel make an argument to the district court orally that the district court shouldn't invoke its inherent authority to sanction him or his client? Based upon my recent review of the transcript, Your Honor, no, he did not. There was no objection to the use of inherent authority. In fact, the majority of the motion for sanctions was spent arguing the standing issue. In two standing, I would like to... If you remind me, was there a hearing in addition to the briefing or just the briefing on the sanctions issue? There was a hearing. It was in May of 2020. Okay. So after the briefing was submitted, there was an opportunity, if counsel wanted to, to elaborate on his point about inherent authority. Correct, Your Honor. By way of history, we filed the motion for sanctions in January of 2020. His response brief was filed in February. We filed a reply and there was oral argument specifically on the motion for sanctions. There's a separate hearing on the motion for summary judgment. So the hearing on the motion for sanctions was specific to that motion and none other. In your motion and reply, did you bring up the idea that the court could properly use its inherent authority? We did, Your Honor, concededly. We did not explicitly state that in our opening brief. We did speak about the bad faith exhibited by plaintiff, but we did specifically address the court's inherent authority in our reply brief. Okay. And was that occasioned by the raising of inherent authority by your opposing counsel in their response? I don't recall exactly why we included it, whether it was prompted by the reply or just something that we realized we should elaborate on in our reply brief, but it was in there. So backing up, do Your Honors have any further questions about the sanctions? I think some history of the case is appropriate, though much of this is already in our briefs, so I'll try to keep this concise. This is not a complicated history. In 2006, Mr. Taylor applied for a $30,000 loan.  He admitted he received those funds. He's never made payments on them. Four months later, in March 2007, the loan was sold by Chase to National Collegiate, and that has been confirmed by the letter from Chase responding to Mr. Taylor's request for information where they said in clear terms on March 8th, 2007, we sold this loan to National Collegiate. The documents further support this transfer and sale. There has been no contravening evidence provided by the plaintiff. Is the Chase information, is that something the court could consider on summary judgment? Is that hearsay? I believe it is something that the court could consider, because these were documents presented by the plaintiff in support of his case. I think it might be different if it was something that the defendants were presenting, but again, these are documents that were presented by plaintiff, so I believe that they can be considered in summary judgment. And furthermore, they only go to support the documents that were already introduced into the case, the pool supplement, the deposit and sale agreement that explicitly speak for themselves, saying that the loan was being sold through a two-part transaction from Chase to National Collegiate just four months after inception. This is not one of these cases, Your Honors, where the loan is sold five, six times over 10 years. This was a single transaction four years after, I'm sorry, four months after origination. I think Judge Jenkins properly took all of the evidence presented before him and found that National Collegiate met its burden. And I think that his decision was correct, that we met the burden on the merits, but I also agree with what I think Your Honors were touching on during Mr. Ady's opening argument, that these issues should have been raised in the 2014 collection lawsuit. Well, before we leave that, getting back to schedule, the schedule one, and the plaintiff has an expert who has raised questions about the metadata and the extract and so forth that need resolved. And as far as the authenticity or whether or not indeed the transfer did occur, and I don't really see in the district court's order where that was dealt with. You're correct that the district court did not directly address the expert, but one thing I would like to point out, in our opposition to his presentation of the expert, the expert was not submitted until March 6th or thereabouts, when Mr. Ady filed a second motion, a second discovery. The deadline for expert reports, I believe, was in October of 2019. The disclosure was due some months earlier than that. And the court recognized that the plaintiff was dilatory in pursuing these claims. We never received the expert report until it was filed with the court. I'm sorry, I didn't mean to cut you off, but let me make sure I understand. My understanding was that the expert was not used. That expert report and the expert, did he do an affidavit or something? It was not used in connection with the summary judgment of the plaintiff. Is that not true? That's correct, Your Honor, because I believe that it was only submitted in a discovery motion. Okay, so in terms of putting it forward to support his contentions in this case, it was not within the context of the decision to be ruled on by the district court, right? I don't believe it was, Your Honor, but I would have to reference the record for that. And I guess the point I'm getting at, and we can all both look at the record, but the point I guess I'm getting at is you can submit something in discovery, and then there's the question of what is the decision the court has to make. The court has to make a decision on summary judgment, and it's going to use the exhibits and information that has been provided on both sides. I guess my question for current purposes, at least your recollection is, in that universe of material, was this expert material present? I don't recall, Your Honor, but I can't tell you what the specifics are. All right, that's fine. I'll just confirm that. Let me ask you about Schedule 1. I think one of the contentions about Schedule 1 related to the business record exception, whether it was covered on that. Do you see a basis for distinction between whether Schedule 1 was accepted by the business record exception and the actual extract itself, the excerpt as it relates to the plaintiff? And specifically what I'm getting at is the contention that can be made that that was created for purposes of litigation. So even if you assume that Schedule 1 itself, the totality of all those names, that document was a business record, one could argue, and I want to understand your response to it, that the excerpt is not covered under the business record exception. What's the response to that? It is covered, Your Honor, because it is an excerpt. It is not a summary. It is an excerpt taken directly from the electronic document. And again, under the Federal Rule of Evidence 1001, Subpart D, a printout from an electronic record is an original. And we presented this excerpt, which again, in Bradley Luke's affidavit, confirmed that this was taken directly from the data. This is not a summary. This is not a summary of evidence. This is an excerpt taken directly from the larger schedule. And we offered to bring the entire schedule to Judge Jenkins for an in-camera review. We offered to bring Mr. Luke to the courthouse in Utah for a discussion about the schedule. But to answer your question, Judge Hobbs, the excerpt absolutely is a business record exception because it's just that. It's an excerpt. It's not a summary. I think we'd be having a different discussion if it was a created summary of the information there. So your distinction would be if this were a stack of papers, what you did was you just pulled one of them out of the business records that your client keeps and submitted it. You didn't create a new document. Correct. Correct. Had we printed out the entire schedule and redacted all the other information, the only difference is there would have just been a couple hundred pages of black paper. And the exact information that was on the excerpt that we presented with the affidavit, the exact same information would be held in the same format, just a lot smaller, as a printout of the entire schedule. No difference whatsoever. And so I do believe that the excerpt does qualify under the business records exception because it is just that it is an excerpt and the affidavit confirms that it was taken directly from the schedule. Again, not a summary. And I think that's the critical distinction. Let me understand about this whole standing capacity issue. As I understand, there's talk about standing. We're not talking about Article III standing, right? I mean, this is not what's going on here. We're talking about whether in the state court litigation, there was essentially a capacity of your client to seek redress vis-a-vis the loan. Correct, Your Honor. Okay, and in that connection, one of the arguments that has been presented here relates to the Utah Business Registration Act and whether that would be applicable and essentially disqualify them from taking that action. Right. Okay. Didn't the district court find that they essentially weighed that because it is a capacity matter by not raising it in state court? Am I recalling that correctly? You are, Your Honor. Okay, and the district court also said that they were covered, that they erred on the... Well, that your client was a foreign entity, foreign trust and therefore not subject to the Utah Business Registration Trust Act, right? Correct. National Collegiate is a Delaware statutory trust. Okay. I just want to clarify. Yeah, and to that, Ed, I do want to address one thing that Mr. Aidey said. He said that the issue of standing was not raised in the state court. That is not true. The issue of standing, i.e., whether National Collegiate owned the loan and was aggrieved by Mr. Taylor's failure to make payments of the loan was directly in the complaint. I believe it was paragraph number two of the complaint where it explicitly stated that Mr. Taylor had not made repayments on the loan and that National Collegiate, by assignment, was the owner of the loan. So to argue that the standing, i.e., whether or not National Collegiate was aggrieved by the failure to make repayments was not in the complaint is untrue. Okay. So there is a separate then standing issue apart from capacity. There is an issue of standing as we would understand in federal court of whether we've been harmed. And the question was whether that played out in state court. That goes to the ownership of the loan. That's different than the question of whether your client was a trust that could bring an action, right? Correct. Correct, Your Honor. That's a separate question. But again, our position is, A, and I see my time is up. Just finish your thought. But our proposition is, A, that the district court correctly found that we did prove ownership of the loan. But, B, that principles of res judicata and issue preclusion prevent Mr. Taylor from relitigating those claims because they were already litigated in the 2014 action, which he did not appeal, nor did he seek to set aside judgment in any timely fashion whatsoever. All right. May I briefly conclude, Your Honor? Quickly, yes. In sum, Your Honor, Alex Taylor has spent 16 years creating chaos and efforts to avoid repayment of this loan. We ask that this court put an end to it and affirm the rulings of the district court. Thank you, Your Honors. Thank you. I think you are out of time. If you would like a minute, you can have it. Thank you. Briefly, when we argued the sanctions motion, the 78B5825 motion before the district court, we did not get into inherent authority in the oral argument, as I recall it. The first we knew about the district court's intent to use its inherent authority was when we got the ruling from Judge Jenkins. And so we did not waive the argument because we did not know that he was going to use his inherent authority until he did it. And then we appealed. And so we properly raised it then. The other question on the loan extract was not an excerpt. I have seen excerpts. I do debt defense. I've seen excerpts from spreadsheets all the time and what they look like. And this is not an excerpt. It's an extract. Somebody has reconstructed information. We also have the same information that these defendants had through Pennsylvania Higher Education Assistance Authority. They got to get the same information from them. They didn't have to have schedule one. Schedule one was never disclosed. It couldn't come in as a business record. All right. Your time is up. Thank you, counsel, for your arguments. Appreciate it.